UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN HAND,

          Plaintiff,                            Case No. 07-15145

v.                                  Arthur J. Tarnow
                                       United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,
              Defendant.              Michael Hluchaniuk
                                       United States Magistrate Judge

_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 10)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On December 4, 2007, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Arthur J. Tarnow referred this matter to Magistrate Judge Mona Majzoub for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability, disability insurance, and Supplemental Security Income benefits.  (Dkt. 2).  On January 15, 2008, this matter was reassigned to the

undersigned.  (Dkt. 3).  This matter is currently before the Court on cross-motions for summary judgment.  (Dkt. 9, 10).

      B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on August 26, 2004 and September 23, 2004, alleging that he became unable to work as of May 3, 2004.  (Dkt. 11, Transcript of Social Security Proceedings, at 15) (Tr.).  The claim was initially disapproved by the Commissioner on January 20, 2005.  (Tr. at 15).  Plaintiff requested a hearing and, on May 3, 2007, plaintiff appeared with counsel before Administrative Law Judge (ALJ) B. Lloyd Blair, who considered the case *de novo*. In a decision dated June 25, 2007, the ALJ found that plaintiff was not disabled. (Tr.  at 25).  Plaintiff requested a review of this decision on July 10, 2007.  (Tr. at 10).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on September 28, 2007, denied plaintiff's request for review. (Tr. at 6-8).

In light of the entire record in this case, I suggest that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED**.

Report and Recommendation
Cross-Motions for Summary Judgment
*Hand v. Comm'r*; No. 07-15145

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Testimony and Statements

Plaintiff was 46 years old at the time of the hearing before the ALJ.  (Tr. at 468).  He had a twelfth grade education plus two years of some kind of technical school.  (Tr. at 469).  He had previously worked as a forklift operator, in two different automobile body and paint shops, in a pipe manufacturing business and in a chemical business.  (Tr. at 469-71).  He attributed his inability to work to herniated discs in his back and upper neck as well as to rotator cuff problems.  (Tr. at 473).  Plaintiff had received a workman's compensation settlement since the time of the alleged onset of his disability.  (Tr. at 472).

Plaintiff testified that he lived alone, that he cooked his meals "sometimes," that he does his own shopping, that he did not do laundry or use a vacuum cleaner, that his mother cuts the grass at his residence, that he ties fishing flies for a hobby, that he could bend over and pick something off the ground, that the most weight he could lift off a table was 10-15 pounds, that he could only stand for 1 or 1-1/2 hours before having to sit down and that he only could walk a total of a city block in length.  (Tr. at 478-80).

He testified that he became disabled on May 3, 2004 but that he did not injure his neck until August of 2006.  (Tr. at 472-73).  He also stated that he did

not work for pay after May of 2004.  (Tr. at 472).  On a 10-point scale, plaintiff

characterized his back and neck pain as a four or five.  (Tr. at 475-76).

      B.    <u>Medical Evidence</u>

      Plaintiff states that he has been disabled since May of 2004.  (Tr. at 472-73).

A part of his disability claim relates to back pain.  The medical records in this case

demonstrate that he began treating for this problem with Dr. Angala Borders-

Robinson, D.O. in December of 2002.  At that time he reported that he had

experienced back pain for approximately twenty years.  (Tr. at 143-46).  Dr.

Borders-Robinson directed that an MRI be done, which resulted in a finding that

plaintiff had normal "vertebral body height and alignment" but that he had  a "very

small central disc protrusion" at L5-S1.  (Tr. at 150).  Dr. Borders-Robinson saw

plaintiff again in January of 2003 and noted that the MRI results showed a small

protruding disc at L5-S1 and commented that it "may" play a "small role" in the

pain plaintiff said he was experiencing.  (Tr. at 141-42).   On a February 2003 visit

with Dr. Borders-Robinson, the doctor noted that she had suggested physical

therapy and the use of a TENS unit.  Plaintiff stated that he had not done any

physical therapy due to the cost and could not find the TENS unit.  (Tr. at 138-39).

Plaintiff's next visit with Dr. Borders-Robinson was in August of 2003.  It was

noted at that time that plaintiff was "finding relief with the use of a chiropractor." (Tr. at 136-37).

In October of 2003, plaintiff went to Dr. Borders-Robinson again. The doctor felt that plaintiff's problems were musculoskeletal in that the MRI had not shown any "significant abnormalities" and she was having a difficult time explaining to him that his bulging disc could not be the source of the pain he was claiming. (Tr. at 133-34). Plaintiff was sent to Dr. Khan and when plaintiff saw Dr. Borders-Robinson in December of 2003, she reported that plaintiff's pain had "significantly improved" as a result of "trigger point injections and epidural steroid injections" administered by Dr. Khan. (Tr. at 130-31). On a visit to Dr. Borders-Robinson in March of 2004, plaintiff indicated that he was still experiencing pain in his back and asked to be given OxyContin but the doctor informed him she did not prescribe that medication and gave him something else. Plaintiff also complained about right shoulder problems and he was referred to an orthopedic surgeon for that. (Tr. at 127-28). In May of 2004 Dr. Borders-Robinson changed the pain medication plaintiff was using. (Tr. at 124-25). Plaintiff's last visit with Dr. Borders-Robinson was in August of 2004 when she prescribed some medication for him to deal with back spasms resulting from the therapy following surgery for a rotator cuff tear. (Tr. at 121-22).

Plaintiff apparently fell off a roof "while drinking" in August of 2006 and two days later sought treatment for that. Testing done at the University of Michigan Hospital and the VA Hospital in Ann Arbor "revealed a small lateral disk herniation at L4-L5 ... without frank compression and a small disk herniation at L2-3 [with no] spinal stenosis [and a] disk herniation at C4-5 with osteophyte disk complex causing a mild central canal syndrome." (Tr. at 233). The medical history at the time of this examination indicated that plaintiff had not worked in "over a year due to chronic shoulder pain." *Id*. The physical examination done at that time indicated that his "neurologic exam ... was entirely within normal limits with normal strength in all four extremities." (Tr. at 234). A consultive neurologic examination done at the VA Hospital in conjunction with his admission at that time indicated that plaintiff denied "pain in the neck, radicular pain, or difficulty with walking." (Tr. at 277). A review of his MRI tests showed "disc-osteophyte complex at C4-5," which would cause "mild to moderate spinal stenosis." Plaintiff's thoracic and lumbar MRI tests showed "no disease" with the exception of a "very small disc bulge in the mid thoracic region." (Tr. at 278). The summary of the examination was that plaintiff was "neurologically normal" and that "no neurosurgical intervention [was] indicated." *Id*. This appears to be

the latest medical record relating to plaintiff's back condition considered by the ALJ.[1]

Plaintiff began to seek treatment for pain in his right shoulder in March of 2004.  (Tr. at 157-59).  He had arthroscopic surgery in May of 2004 for "labral repair" and had post-operative therapy for his shoulder through at least September of 2004.  (Tr. at 151-55).  Plaintiff testified that he had surgery on his shoulder in 2004 and 2005 but no medical records regarding the 2005 surgery were presented to the ALJ.  (Tr. at 476-77).

Several consultive examinations were conducted following plaintiff's application for disability benefits.  Psychologist Leonard J. McCulloch did a psychological examination of plaintiff for the Michigan Disability Determination Service in November of 2004.  Mr. McCulloch determined plaintiff's global

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

assessment of functioning (GAF) score to be 60.[2]  In December of 2004

Psychiatrist Paul Liu conducted a Mental Residual Functional Capacity

Assessment of plaintiff.  Dr. Liu rated plaintiff as "not significantly limited" as to

fifteen of the twenty factors he considered and "moderately limited" as to the other

five factors.  He concluded that plaintiff "can drive, do laundry, shop, pay bills

[and] follow instructions." (Tr. at 176).  He further stated that plaintiff could "do

simple tasks in a work setting." (*Id*.)

Also in December of 2004, Michigan Medical Consultants conducted a

medical evaluation of plaintiff.  Dr. Gregory F. Hackel performed that examination

and concluded that plaintiff had an "impaired range of motion in the right

shoulder," which would make it "difficult to do any employment where there is a

lot of heavy lifting, pulling, pushing, climbing, bending or stooping" and that any

"prolonged activity or repetitive activity will increase the pain" in his shoulder.

_____

[2] A GAF score purports to measure a person's ability to function based on psychological, social and occupational functioning.  The scale for rating a person on this basis runs from 1 to 100 with a higher score representing a greater ability to function based on this criteria.  A score of 60 is at the high end of a range suggesting "moderate" difficulty in social or occupational functioning.  The Commissioner has indicated that GAF scores do not have a direct correlation to the severity requirements of the mental disorder listings.  *Wind v Barnhart*, 113 Fed.Appx. 684 (11th Cir. 2005).  The Sixth Circuit has affirmed denials of disability benefits where the GAF scores were 50 or below. *See, e.g.*, *Smith v Comm'r of Soc. Sec.*, 74 Fed.Appx. 548 (6th Cir. 2003); *Nierzwick v Comm'r of Soc. Sec.*, 7 Fed.Appx. 358 (6th Cir. 2001); *Thurman v Apfel*, 211 F.3d 1270 (6th Cir. 2000).

The plaintiff had "unremarkable straight leg raising" and could "ambulate without difficulty." (Tr. at 193-97).

A Physical Residual Functional Capacity Assessment was conducted by a DDS physician in January of 2005.  That assessment concluded that plaintiff could lift or carry 20 pounds occasionally, lift or carry 10 pounds frequently, stand or walk for at least 2 hours of an 8-hour workday, could sit for about 6 hours of an 8-hour workday and had no limitation in pushing or pulling.  While the doctor noted some limitation of motion resulting from plaintiff's right shoulder and back pain, there were no absolute prohibitions regarding plaintiff's ability to perform any type of employment.   Plaintiff's postural limitations allowed him to "occasionally" climb, stoop or kneel while his manipulative limitations allowed him to "reach" with his right hand "occasionally" and to "handle" with his right hand "frequently."  The doctor also indicated that plaintiff should not use hand held vibrating instruments with his right arm.   Regarding the symptoms alleged by plaintiff, the doctor noted the complaints made by plaintiff would affect plaintiff's activities of daily living but the doctor also indicated that plaintiff was only "partially credible" with respect to these claims.  (Tr. at 198-203).

C.     Vocational Expert

A vocational expert, James R. Engelkes, testified during the hearing.  Mr.
Engelkes was presented with a hypothetical situation relating to plaintiff's residual
functional capacity.  In the hypothetical, assuming that a person who could meet
the demands of "light" work and had other limitations on their functional ability to
perform employment, he was asked whether that person could do plaintiff's past
work.  Mr. Engelkes answered the question by indicating that such a hypothetical
person could not do plaintiff's past work.  (Tr. at 489).  The ALJ then modified the
hypothetical to include plaintiff's vocation profile with respect to age, education
and work history and asked if there were a significant number of jobs in the
regional or national economy that such a person could perform.  Mr. Engelkes
responded that there were and gave examples of those jobs including general
office clerk, collator operator, and sorter/folder positions.  (Tr. at 490).

D.     ALJ Findings and Decision

The ALJ found that plaintiff met the insured status requirements of the
Social Security Act through June 30, 2010.  (Tr. at 15).  He then followed the five-
step sequential evaluation process established in 20 C.F.R. § 404.1520(a) and
§ 416.920(a) in order to reach a decision on plaintiff's application.  The ALJ
initially concluded that plaintiff had not engaged in substantial gainful activity

Report and Recommendation
Cross-Motions for Summary Judgment
*Hand v. Comm'r*; No. 07-15145

since the claimed onset of his disability which was May 3, 2004.  While plaintiff had worked after that his employment did not amount to "substantial gainful activity."  (Tr. at 16).

Plaintiff was found to have the following severe impairments:  degenerative disc disease of the neck and back, status post rotator cuff repair, and depression. (Tr. at 18).  The ALJ concluded that while these impairments, individually or in combination, caused limitations in plaintiff's ability to perform certain tasks, they were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P of Regulation No. 4 ("the listing").  (Tr. at 19).  The ALJ determined that plaintiff retained the residual functional capacity (RFC) to lift 20 pounds occasionally and 10 pounds frequently, stand two hours in an eight-hour workday, walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday as well as numerous other limitations consistent with the hypothetical presented to the vocational expert.  (Tr. at 19).  In determining plaintiff's RFC, the ALJ considered all of plaintiff's symptoms that the ALJ "accepted as consistent with the objective medical evidence and other evidence." *Id*.

In commenting on plaintiff's testimony regarding his impairments, the ALJ stated "the undersigned does not doubt that the claimant experiences some pain

[but] his statements concerning his impairments and the impact on his ability to work are not entirely credible in light of the claimant's own description of his activities and the life style, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the claimant's demeanor at hearing, the reports of the treating and examining practitioners, the medical history, and the findings made on examination." (Tr. at 21)  After referring to various aspects of the administrative record, the ALJ stated "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 23).

The ALJ determined that plaintiff could not perform his past relevant work but, considering his age, education, work experience and residual functional capacity, there were jobs in the national economy that he could perform, and therefore, plaintiff was not under a disability through the date of the decision of the ALJ. (Tr. at 24-25).

## III.   DISCUSSION

### A.   Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*per curiam*).  The Commissioner is charged with finding the facts relevant to an application for disability benefits.  A federal court "may not try the case *de novo* . . . ."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  The scope of the court's review is limited to an examination of the record only.  *Brainard*, 889 F.2d at 681.  "Substantial evidence is more than a

13

scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, on whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision.  *Newton v. Sec'y of Health & Human Servs.*, 1992 WL 162557 (6th Cir. 1992).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Anderson v. Bowen*, 868 F.2d 921, 924 (7th

Cir. 1989) ("a written evaluation of every piece of testimony and submitted
evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987)
(ALJ need only articulate his rationale sufficiently to allow meaningful review).
Significantly, under this standard, a reviewing court is not to resolve conflicts in
the evidence and may not decide questions of credibility.  *Garner*, 745 F.2d at
387-388.

    B.    <u>Governing Law</u>

In enacting the social security system, Congress created a two-tiered system
in which the administrative agency handles claims, and the judiciary merely
reviews the determination for exceeding statutory authority or for being arbitrary
and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative
process itself is multifaceted in that a state agency makes an initial determination
which can be appealed first to the agency itself, then to an ALJ, and finally to the
Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).  If relief is not
found during this administrative review process, the claimant may file an action in
federal district court.  *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994).
"[B]enefits are available only to those individuals who can establish 'disability'

within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*) Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice, § 1.1 (1984). While the two programs have different eligibility requirements, both require a finding of disability for the award of benefits.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.

Step Three:  If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.

Step Four:  If the claimant is able to perform his or her previous work, benefits are denied without further analysis.

Step Five:  If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *see also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n. 2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled."  *Preslar*, 14 F.3d at 1110.  "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]."  *Id.*  "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ."  *Id.*

C.    Analysis and Conclusions

The ALJ determined that plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 19). Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b) (1991).

After a review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this Circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,*

800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff's position is premised on the contentions that (1) the hypothetical question posed to the vocational expert does not accurately describe plaintiff's limitations, including his mental impairments, when they are considered in combination and (2) the ALJ did not properly evaluate plaintiff's subjective symptoms in evaluating the severity of his impairments.  Defendant's response to plaintiff's position is that the hypothetical is accurate in that it properly described plaintiff's functional limitations, as determined by the ALJ,  for the vocational expert and that the ALJ considered all of plaintiff's impairments including any mental impairments.  While not directly addressed by defendant, the contention that ALJ considered all the impairments of plaintiff implies that the ALJ properly considered all the subjective symptoms of plaintiff in concluding that he was not disabled within the applicable law.

The following hypothetical was presented to the vocational expert by the ALJ:

> ... assume a hypothetical individual who can meet the
> demands of light work, should never use ladders,
> scaffolds or ropes, should only occasionally use ramps or
> stairs, should avoid walking on uneven surfaces, should
> only occasionally stoop, crouch, kneel or crawl, should
> never use [inaudible] pneumatic or power tools, should

> only occasionally do any reaching with the right upper
> extremity, can frequently, but not [sic], handling finger
> with the right upper extremity, should only occasionally
> bend, twist or turn at the neck, who currently uses a cane
> to ambulate, should have simple unskilled work with an
> SVP of 1 or 2, work involving one, two or three step
> instructions, no job involving concentration and detailed
> or precision tasks or multiple and simultaneous tasks, no
> jobs requiring the individual to count, to calculate,
> problem solve or reason, jobs that do not require changes
> in adaptation or work settings or duties more than once
> per month, jobs that do not require the individual to take
> initiative or make independent decisions, and jobs
> without production quota, that is jobs that do not require
> specific number of pieces per hour or that would have a
> down line or up line to any co-workers [and] had
> claimant's vocational profile relative to age, education
> and work history.

(Tr. at 489-90).  In response to this hypothetical, the vocational expert stated that a

significant number of jobs existed in the regional and national economy, which a

person fitting the limitations of the hypothetical could perform.  (Tr. at 490).  A

response to a hypothetical question by a vocational expert may be substantial

evidence if the hypothetical is appropriate.  *Varley v. Sec'y of Health and Human

Services*, 820 F.2d 777 (6th Cir. 1987).

Plaintiff argues that the hypothetical was improper because it assumed that

the individual was capable of doing light work and plaintiff maintains that it

should have been limited to sedentary work and when the ALJ created the

hypothetical he did not consider the combined effect of the limitations including

plaintiff's mental limitations.  A hypothetical must "accurately [set] forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).  In creating a hypothetical for a vocational expert, the ALJ is obligated to "translate the [plaintiff's deficiencies] into a set of specific limitations that are properly rooted in the administrative record." *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F.Supp.2d 804, 807 (E.D. Mich. 2005).

In *Smith*, the ALJ had determined that plaintiff "often" suffered "deficiencies of concentration, persistence or pace" and, in the hypothetical for the vocational expert, included a limitation that restricted the jobs to those that were "routine and low stress, and do not involve intense interpersonal confrontations [or] high quotas."  The *Smith* court found that those deficiencies were properly incorporated into the hypothetical and affirmed the ruling in favor of the Commissioner.  In *Bohn-Morton*, the ALJ had determined that plaintiff "often" suffered from "a deficiency of concentration, persistence, or pace."  The hypothetical in that case included a limitation to "simple and rote type job tasks."

While plaintiff claims that the ALJ did not consider his impairments in combination, the ALJ clearly said that he was considering the combination of impairments.  In performing the analysis necessary for step two the ALJ noted that plaintiff suffered from three "severe" impairments including "degenerative disc

disease of the neck and back, status rotator cuff repair times two, and depression."
(Tr. at 18).  Plaintiff has not identified an impairment that was established by the
record beyond the impairments that the ALJ noted.  The ALJ concluded that
plaintiff did not have "an impairment or combination of impairments that meets or
medically equals one of the listed impairments" under the law.  (Tr. at 19).  This
statement also indicates that the ALJ considered plaintiff's impairments in
combination.  While plaintiff may disagree with the ALJ's opinion as to the
disabling nature of his impairments, plaintiff has not shown any evidence from the
record that indicates that the ALJ did not consider the impairments in
combination.

Plaintiff contends that the ALJ did not properly weigh his mental
impairments which plaintiff describes as "significant."  (Dkt. 9, p. 5).   Plaintiff
bases his argument in this regard on the opinions of Dr. Liu and the "consultive
psychologist."  *Id*.  It is not clear if plaintiff is describing Dr. Liu as the
"consultive psychologist" because plaintiff does not include any record cites in
reference to the findings of the "consultive psychologist."  *Id.*  Dr. Liu did an
assessment of plaintiff in December of 2004.  Dr. Liu, a psychiatrist, rated plaintiff
based on twenty factors which are intended to measure a person's "capacity to
sustain [mental] activity over a normal workday and workweek, on an ongoing

basis." (Tr. at 174-75). Dr. Liu rated plaintiff as "moderately limited" as to five of those factors and "not significantly limited" as to the other fifteen factors. No factor was assessed as "markedly limited." Dr. Liu expanded on the assessments by noting that plaintiff "can get along with others but would struggle with stress of change in [a] work setting [and plaintiff] can drive, do laundry, shop, pay bills and follow instructions [and] can do simple tasks in a work setting." (Tr. at 176). While it is clear that plaintiff has some limitations based on the statements by Dr. Liu, those statements certainly do not indicate that plaintiff was unable to perform substantial gainful activity and the limitations seemed to be accurately incorporated into the hypothetical the ALJ presented to the vocational expert.

The only other mental assessment of plaintiff in the record was conducted in November of 2004 by Leonard J. McCulloch, M.A., for the Michigan Disability Determination Service. (Tr. at 169-73). The conclusion reached by Mr. McCulloch was that plaintiff had a GAF score of 60, which, as noted earlier, indicated that plaintiff was at the high end of the "moderate" range of mental health illness. This assessment does not establish that plaintiff is unable to perform substantial gainful activity. See note 2, *supra*.

Plaintiff furthers argues that "an MRI of the brain ... which shows some disease process" is "further evidence of mental impairment." (Dkt. 9, p. 5).

Plaintiff's argument does not include any citation to the record , so thus basis of plaintiff's argument in this regard is not entirely clear.  The record reflects that plaintiff had an CT scan of his head in August of 2006, apparently in conjunction with his fall from the roof, which suggested "chronic disease."  (Tr. at 241). Plaintiff argues that it was error for the ALJ not to discuss this finding.  As defendant points out, this finding did not result in any diagnosis indicating functional limitation or relation to plaintiff's depression.  (Dkt. 10, p. 12, n. 5). This aspect of the record does not even clearly establish a condition that might lead to a determination that plaintiff has a disability because the nature of the "chronic disease" is not identified.   Plaintiff's argument is based primarily on the existence of a condition, rather than on any resulting impairments or specific restrictions.  This is insufficient to establish an inability to work.  *See e.g.*, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."); *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other.")

The hypothetical posed by the ALJ took the limitations into account that were supported by the entire record and found to exist by the ALJ.  The physical limitations were reflected in the limitation of work to "light" work with additional limitations of never using ladders, scaffolds or ropes, occasionally using ramps or stairs, never using torque, pneumatic or power tools, occasionally reaching with the right upper extremity, occasionally bending or twisting at the neck and the use of a cane to ambulate.  (Tr. at 489).  Plaintiff's mental limitations that might have resulted from his depression were reflected in the limitations including simple unskilled work, no concentration or detailed or multiple tasks, no counting, calculating, problem solving or reasoning, no initiative or independent decision making and no production quotas.  *Id*.

Based on the guidance from *Smith* and *Bohn-Morton*, the hypothetical posed to the vocational expert in the present case accurately incorporated the deficiencies as found by the ALJ.  The testimony of the vocational expert could, therefore, serve as substantial evidence supporting the ruling of the ALJ if plaintiff's deficiencies were properly determined by the ALJ.

Plaintiff argues that the ALJ did not properly evaluate plaintiff's testimony relating to his subjective symptoms.  In this regard, the ALJ found that the claimant's "statements concerning his impairments and the impact on his ability to

work are not entirely credible." (Tr. at 21). Normally, the ALJ's credibility finding is entitled to deference and should not be disregarded, given the ALJ's opportunity to observe the plaintiff's demeanor. However, if the ALJ rejects the testimony of the plaintiff as not being credible, the ALJ must clearly state the reasons for that conclusion. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). In commenting on plaintiff's credibility, the ALJ noted that he had considered "the claimant's own description of his activities and life style, the degree of medical treatment required, discrepancies between the claimant's assertions and the information contained in the documentary reports, the claimant's demeanor at hearing, the reports of the treating and examining practitioners, the medical history, and the findings made on examination." (Tr. at 21). The ALJ cited to numerous aspects of the record where the ALJ found inconsistencies between the information in the record and plaintiff's testimony regarding his symptoms and then concluded that "the record is void of objective signs and reliable indicators to support the frequency and intensity of the claimant's alleged symptoms." (Tr. at 22-23). The ALJ sufficiently explained the basis of his credibility determination and therefore his credibility findings should be given the deference to which the law entitles it.

After a review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party must file a response.  The response must not exceed 20 pages

Report and Recommendation
Cross-Motions for Summary Judgment
*Hand v. Comm'r*; No. 07-15145

in length unless such page limit is extended by the Court.  The response shall

address specifically, and in the same order raised, each issue contained within the

objections by motion and order.  If the Court determines any objections are

without merit, it may rule without awaiting the response to the objections.


Date: January 22, 2009

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge


## CERTIFICATE OF SERVICE

I certify that on January 22, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Derri T. Thomas, AUSA, Neal J. Wilensky, and Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant